FIONA BENTLEY et al., Doing Business under the Name of FIONA BENTLEY PRODUCTIONS, Appellants, *v.* TEXTILE BANKING COMPANY, INC., Respondent.

First Department, June 28, 1966.

*Leo E. Falkin* of counsel (*Young, Kaplan & Edelstein,* attorneys), for appellants.

*Arthur A. Greenfield* of counsel (*Frederic P. Houston* with him on the brief; *Otterbourg, Steindler, Houston & Rosen,* attorneys), for respondent.

*Per Curiam.* Plaintiffs are partners who were in the business of producing tape recordings, sometimes called "masters", to be used for the manufacture of phonograph records. Plaintiffs did not themselves make any records but instead allowed others to use the tapes under some royalty arrangement. On June 8, 1961, plaintiff entered into an agreement with a company now known as Riverside Record, Inc. (herein Riverside) in

regard to 21 tapes. On July 10, 1962, a second agreement, regarding 15 additional tapes, was made. The agreements are in writing but their interpretation is subject to dispute and will be discussed below.

Riverside, having possession of the tapes, was engaged in the production and sale of records made from them. It fell into serious arrears in the payments it was required to make on its contract with plaintiff. In November, 1963 Riverside executed a chattel mortgage on all of its assets, including the above-described tapes, as security for past indebtedness and a new loan from defendant. In July, 1964 Riverside went into bankruptcy. Previously defendant had foreclosed its mortgage and now has possession of the tapes. Plaintiff demanded the same and has brought this action for replevin. Special Term granted summary judgment to defendant.

To succeed in the action it is incumbent on plaintiff to show a present right to the possession of the tapes. To succeed on this appeal, however, it is only necessary for plaintiff to show an issue on whether it has a right to possession. To determine this, we first turn to the agreements whereby Riverside acquired possession of the tapes. The June 8, 1961, agreement is in the form of a letter from Bill Grauer Productions, Inc. (as Riverside was then called) to plaintiff. It states in so many words that Riverside is buying and plaintiff selling the tapes. It next provides: "We [Riverside] shall have the sole and exclusive rights and ownership of the masters, (but only in the United States and only for a term of five years from the date hereof) including but not limited to the right to use the masters and recordings obtained therefrom * * * all of which shall be entirely our property free of any claims whatsoever by you or any person deriving any rights or interest from or through you". The fourth paragraph provides for royalties on the sale of records and states in addition: "The masters leased here-under shall not be coupled, or added to, except with other masters of yours without your approval".

The agreement of July 10, 1962, provides, as to the additional tapes, that the same terms shall apply except for a difference in the amount of royalties, not material here, and states: "The leased territory shall include the United States and Canada." It further provides that the term of the agreement shall be five years from its date.

It would appear that, despite the words used describing the transactions as sales, no transfer of title was intended or took place. Instead, it would seem that either a lease or license was the agreement that the parties intended and effected. It is not

only incongruous but contrary to definition that a sale should result where the so-called purchaser's rights to the property have a specific time limitation. At the very least, an issue is presented as to whether Riverside acquired anything more than the exclusive right to exploit the tapes by making records therefrom for a period of five years and for that purpose to keep possession of them during that period.

However, granting that there is an issue so presented, plaintiff's difficulties are not overcome. Undoubtedly, under the agreements Riverside had the right to retain the tapes for a period of five years. Although the agreements are silent on the subject, it is a concomitant of a lease of personalty that the chattels will be returned to the lessor at the expiration of the lease. (As to the first agreement, the five-year period will expire in a matter of days and, as to these, a supplemental complaint could render all further questions academic.) Until the expiration of this period, unless Riverside did or suffered something which terminated the agreement prior to the expiration date and before the initiation of this action, plaintiff would not be entitled to possession of the tapes. Plaintiff urges three factors, any one of which it claims terminated the agreement: breach by failure to make the royalty payments called for; hypothecation of the tapes; and bankruptcy. As to the first, the most that could be said is that it would give rise to a suit for the unpaid balances. As to the second, a triable issue is presented. Clearly, the hypothecation enabled the defendant to take over the tapes and prevented performance of the contract by Riverside. The contract here was not assignable if it was one involving personal credit and confidence (*Paige* v. *Faure*, 229 N. Y. 114, 118; 3 N. Y. Jur., Assignments, § 7). This contract depended on the ability and experience of Riverside. Plaintiff's return depended on the number of sales that were made. Contracts of that character are not assignable without consent, and a purported assignment is a terminable breach (*Nassau Hotel Co.* v. *Barnett & Barse,* 162 App. Div. 381, affd. 212 N. Y. 568). To the same effect is bankruptcy which renders the party unable to perform.

Defendant's contentions are, first, that the agreements constituted an outright sale. We have seen that this is a factual question as to the expressed intention of the parties. Secondly, it is claimed that plaintiff is estopped to deny that it was a sale because it framed the agreement advisedly to make it appear that it was a sale. Whether it does so appear, whether in its totality it conveys such an impression to a third party, and whether defendant was misled thereby, are likewise factual questions.

The order should be modified, on the law, to the extent of denying defendant's motion for summary judgment and, as so modified, affirmed, with costs and disbursements to the appellant.

BOTEIN, P. J., EAGER, STEUER and CAPOZZOLI, JJ., concur.

Order and judgment (one paper) unanimously modified, on the law, to the extent of denying defendant's motion for summary judgment, and, as so modified, affirmed, with $50 costs and disbursements to the appellant.