**HONEYWELL INFORMATION SYS-
TEMS, INC., Plaintiff,**

v.

**DEMOGRAPHIC SYSTEMS, INC.,
Defendant.**

**No. 75 Civ. 965.**

United States District Court,
S. D. New York.

May 19, 1975.

Breed, Abbott & Morgan, New York City, for plaintiff; Thomas A. Shaw, Leonard A. Mentzer, New York City, of counsel.

Preminger, Meyer & Light, Brooklyn, N. Y., for defendant; Marvin Preminger, Brooklyn, N. Y., of counsel.

## MEMORANDUM

BONSAL, District Judge.

In this diversity action, plaintiff Honeywell Information Systems, Inc. moves pursuant to the New York replevin statute, Civil Practice Law and Rules § 7101 et seq. (made applicable herein under F.R.Civ.P. 64), and pursuant to the Uniform Commercial Code, McKinney's Consol.Laws, c. 38, § 9–503, to repossess from defendant Demographic Systems, Inc. certain data processing equipment which is the subject matter of an Installment Sales and Security Agreement ("Installment Sales Agreement"), dated July 14, 1972, and certain other computer-related devices which are the subject matter of an "Agreement for Data Processing Equipment Service" ("Lease Agreement"), dated June 9, 1972, and amended May 9, 1974.

Plaintiff commenced this action on February 26, 1975 and served defendant with the summons and complaint. Plaintiff seeks *inter alia* (1) to recover $135,724.76 allegedly due on a promissory note, dated July 14, 1972, secured by the Installment Sales Agreement; (2) to recover $54,091.00 allegedly owed by defendant to plaintiff under the Lease Agreement; and (3) to recover possession of the equipment which is the subject matter of these Agreements.

Defendant answered plaintiff's complaint denying all plaintiff's material allegations and asserting two affirmative defenses related to plaintiff's allegedly inadequate performance of its obligations under said Agreements. Defendant also filed a counterclaim asserting that the faulty operation of the equipment caused defendant great financial damage.

The facts relevant to the various claims will be described hereinafter as they bear on the parties' contentions.

---

Plaintiff moves, pursuant to F.R.Civ. P. 64 and Article 71 of the New York Civil Practice Law and Rules ("CPLR"), for an order of replevin to obtain the equipment described in the Installment Sales Agreement and the Lease Agreement, on the ground that defendant is in default of its installment payments and, by virtue of the terms in the Installment Sales Agreement, the Lease Agreement and the UCC § 9–503, plaintiff has a present possessory interest in the equipment.

Defendant opposes plaintiff's motion, contending that its records indicate that no monies are due to plaintiff under the Installment Sales Agreement or the Lease Agreement; that substantial delays occurred in the installation of the equipment which caused defendant significant damages; that it ceased making payments to plaintiff in 1974 only when the equipment's "performance was substantially under the industry standards," and that plaintiff "made no serious request for payment" during this period.

### The Applicable Statutes

Article 71 of the CPLR creates a cause of action to "try the right to possession of a chattel." CPLR § 7101 (McKinney 1963). Replevin, a procedure in the nature of a provisional remedy, is ancillary to an action for re-covery of a chattel. See Practice Commentary, CPLR § 7101 (McKinney 1963); Sears Roebuck & Co. v. Austin, 60 Misc.2d 908, 304 N.Y.S.2d 131 (N.Y. Co.Civil Ct.1969). See also CPLR § 7102 (McKinney 1963). While the action to recover a chattel may proceed without seizure of the chattel, an order of replevin is appropriate if plaintiff shows a present right to possession of the chattel. Bentley v. Textile Banking Co., 26 A.D.2d 112, 271 N.Y.S.2d 417 (1st Dept.1966). In an action under § 7101, as in an action for replevin, the issue is strictly whether plaintiff or defendant has the superior possessory right. Practice Commentary, CPLR § 7101 (McKinney 1963). See Hofferman v. Simmons, 290 N.Y. 449, 49 N.E.2d 523 (1943); L. & Y. Food Products Corp. v. Delmonte Ice Cream Co., 109 N.Y.S.2d 522 (Sup.Ct.Spec.Term, N.Y. Co.1951). "Defendant's obligation is to pay and comply with the terms of the [security agreement] and it has no legal right to impose other terms as a condition precedent to payment." L. & Y. Food Products Corp. v. Delmonte Ice Cream Co., *supra* at 524. Therefore, even taking defendant's allegations of poor equipment performance as true, defendant fails to state a valid defense to a replevin claim where, as here, performance was not a condition of payment under the Agreements.[1]

1. The Installment Sales Agreement provides:
   "15. *Maintenance*
   "[Plaintiff] will, if requested, provide [defendant] with maintenance service for the equipment purchased hereunder on the basis of [plaintiff's] prices, terms and conditions then prevailing on similar equipment for its commercial customers.
   "16. *Warranty*
   "[Plaintiff] warrants the equipment to be free from defects in workmanship or material under normal use and service, but [plaintiff's] entire liability under this warranty is to repair or replace free of charge any such equipment which, within *three (3)* months after the date of passing title [July 14, 1972], is found to be defective as to workmanship or material. . . . THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WAR- RANTIES, EXPRESS OR IMPLIED, IN- CLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, RE- SPECTING THIS AGREEMENT, THE EQUIPMENT PURCHASED HEREUN- DER, PROGRAMMING AIDS, OR SERVICES FURNISHED HEREUN- DER." [Emphasis in original.]
   The Lease Agreement provides in relevant part:
   ". . . THERE ARE NO WARRAN- TIES, EXPRESS OR IMPLIED, IN- CLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, NOT SPECIFIED HEREIN, RESPECTING THIS AGREEMENT OR THE EQUIP-

*Plaintiff's Motion for Replevin Under the Installment Sales Agreement*

The equipment here in question was sold by plaintiff to defendant for a total price of $200,000 plus a 10% finance charge. Defendant paid $25,000 at the outset and signed a promissory note secured by the equipment under the Installment Sales Agreement to pay the $175,000 balance in sixty equal monthly installments of $3,718.00, commencing in December 1972. On August 20, 1974, after defendant had failed to make five installment payments,[2] totalling $18,590.00, plaintiff sent defendant written notice of default by reason of non-payment, pursuant to paragraph 13 of the Installment Sales Agreement.[3] After receiving said notice, defendant made some additional payments, but it remained in arrears and therefore in default. By letter of January 29, 1975, plaintiff notified defendant of its intention to exercise its right to repossess the equipment, as expressly provided in the Installment Sales Agreement[4] and under the Uniform Commercial Code, § 9–503 (McKinney 1964).[5] On February 7, 1975, plaintiff was refused permission to enter and peaceably remove the equipment. *See* Employers' Fire Insurance Co. v. Cotten, 245 N.Y. 102, 156 N.E. 629 (1927). On February 24, 1975 plaintiff notified defendant in writing that it was electing to accelerate the debt due under the promissory note in accordance with the terms thereof.[6] Therefore, plaintiff contends that, as of February 24, 1975, the balance of the amount owed under the promissory note, $135,724.76, became immediately due, and defendant's failure to pay renders it currently in default as to that amount.

The terms of the parties' Installment Sales Agreement determine whether defendant was in default of its obligations at any given time. *See* 1 Coogan, Hogan, Vagts, Secured Transactions Under the U.C.C. § 8.02, at 865–66.

MENT LEASED HEREUNDER, OR PROGRAMMING AIDS, OR SERVICES FURNISHED HEREUNDER." [Emphasis in original.]

2. The unpaid installments were: March 1, 1973; April 1, 1974; May 1, 1974; June 1, 1974; and July 1, 1974.

3. The Installment Sales Agreement, ¶ 13, provides:
"[Defendant] shall be in default under this Agreement upon the happening of any of the following . . . :
"A. Non-payment . . . of any obligation . . . contained or referred to in this Agreement or in any Promissory Note secured hereby . . . and the continuance of such non-payment . . . for a period of ten (10) days after [plaintiff's] written notice thereof to [defendant]."

4. Paragraph 13 further provides:
"Upon [defendant's] default as aforesaid and at any time thereafter, [plaintiff] shall have the right . . . to exercise any one or more of the following remedies:
"A. Declare the entire amount of the unpaid balance and other charges to be immediately due and payable;
"B. Take possession of any or all of the equipment . . . without demand or notice, without any court order or other process of law . . . ;
"C. In accordance with the Uniform Commercial Code or other applicable law, [plaintiff] shall have any and all rights and remedies as a secured party . . . ;
"D. Pursue any other remedy now or hereafter existing at law or in equity."

5. The UCC § 9–503 (McKinney 1964) provides:
"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

6. The promissory note provided:
"If any default occurs in the making of any payments hereunder or in . . . performance of any terms and conditions of the said Installment Sales and Security Agreement and such default continues for more than ten (10) days after written notice therof [sic] from [plaintiff] to [defendant], the entire balance of this Note shall become immediately due and payable, if not already due and payable, at [plaintiff's] election expressed by written notice. . . . "

By the terms of the Installment Sales Agreement, defendant was in default ten days after the date it received plaintiff's letter of August 20, 1974, i. e., on or about September 1, 1974. Plaintiff alleges, and defendant fails to contradict, that defendant had not paid the $18,590.00 arrearages in full as of February 24, 1975. Therefore, defendant was still in default on that date, when plaintiff elected to accelerate the amount due on the promissory note, thereby increasing the immediately due obligation to $135,724.76.

Defendant's effort to satisfy this obligation by letter of February 25, 1975 directing that credits from unrelated contracts, totalling $15,383.70, and an enclosed check for $7,642.30 be applied to the debt under the promissory note was insufficient to prevent a default since the obligation then amounted to the full $135,724.76.

Accordingly, plaintiff had a right to immediate possession of the equipment from ten days after defendant's receipt of the August 20, 1974 default notice, since the equipment was the collateral under the Installment Sales Agreement securing the promissory note. See UCC § 9–503 (McKinney 1964); In the Matter of Yale Express System, Inc., 370 F.2d 433, 437 (2d Cir. 1966), and defendant's letter of February 25, 1975 was ineffective to cut off plaintiff's right to possession of the equipment.

Defendant also appears to argue that it was not in default at all because "to date [April, 1975] the total credit to the account of the defendant is $91,403.75." This argument must be rejected. While credits on one account of a debtor may be applied to debts on other accounts of that debtor (Harrold v. Commissioner of Internal Revenue, 232 F.2d 527 (9th Cir. 1956), the debtor must designate the account to which the monies should be applied, and if the debtor fails to so specify, then the creditor is entitled to do so (see Susi v. Belle Action Stables, Inc., 267 F.Supp. 293, 295 (S.D.N.Y.1967) (Mansfield, J.)), and the creditor may do so in such a fashion as to give the creditor the utmost advantage of such security as the creditor may possess (see United States v. Pollack, 370 F.2d 79, 80 (2d Cir. 1966) (Medina, J.)). Accordingly, defendant has failed to establish a valid defense to plaintiff's possessory claim since defendant nowhere demonstrates that at any time prior to February 24, 1975 it instructed plaintiff to apply any credits owed to defendant by plaintiff to defendant's defaulting account. Defendant further fails to demonstrate that since February 24, 1975, when plaintiff accelerated the obligations under the promissory note, defendant authorized plaintiff to apply the alleged $91,403.75 in credits to the full accelerated debt. Accordingly, defendant is in default under its Installment Sales Agreement, notwithstanding any credits to its accounts on other contracts with plaintiff.

The Court also notes that defendant was on notice as of January 29, 1975 that plaintiff intended to collect the payments in arrears since plaintiff had sought by letter of that date to repossess the equipment in question. Therefore, defendant had an opportunity to cure the default prior to February 24, 1975, almost one month later, when plaintiff finally elected to accelerate the balance of the debt.

Accordingly, plaintiff has a present right to possession of the equipment covered by the Installment Sales Agreement, and plaintiff's motion for an order of replevin is granted.

### Plaintiff's Motion for Replevin Under the Lease Agreement

Plaintiff alleges that it is entitled to immediate possession of the equipment which is the subject of the Lease Agreement because the ownership rights in said equipment remained with plaintiff and defendant defaulted in twelve of its lease payments due in 1973 and 1974. Plaintiff sent defendant a letter, dated August 20, 1974, notifying

defendant of its default in the amount of $50,961.00, the amount of unpaid rentals accrued as of that date. As per the Lease Agreement,[7] plaintiff gave defendant thirty days from receipt of the notice to cure the default or else plaintiff would exercise its right under the Agreement to terminate the lease, remove the equipment at defendant's expense, and collect the full amounts to which plaintiff was entitled. Defendant made some payments on this account thereafter, but the indebtedness nevertheless increased to $54,091.00 by February 24, 1975, when plaintiff notified defendant by letter that the Lease Agreement was terminated and that plaintiff would repossess the leased equipment.[8] Defendant refused to permit plaintiff to peaceably remove the machinery. *See* Employers' Fire Insurance Co. v. Cotten, *supra.*

Defendant has failed to assert any facts to contradict plaintiff's allegations or that indicate it cured the default. Accordingly, plaintiff has a present right to possession of the leased equipment and plaintiff's motion for an order of replevin of said equipment is granted.

Plaintiff will post an undertaking in an amount equal to twice the value of the chattels (alleged to be $330,000), $660,000, for the return of the chattels to "any person to whom possession is awarded by judgment, and for payment of any sum awarded by the judgment against the plaintiff." *See* CPLR § 7102 (McKinney Supp.1974).

Settle order on notice.

---

7. The Lease Agreement provides in relevant part:

"11.2 If either party shall be in default of its covenants under this Agreement and such default continues for thirty (30) days after written notice thereof by the other party, this Agreement may thereupon be terminated by such other party.

"11.3 All items of equipment and other devices furnished by [plaintiff] hereunder shall not be the property of Lessee [defendant] unless purchased, and may be removed by [plaintiff] at any time after termination of this Agreement."

8. Plaintiff also had tried to repossess the leased equipment earlier by notifying defendant of its intentions in the letter of January 29, 1975. *See* text accompanying notes 4 & 5, *supra.*