OPINION OF THE COURT
Richard S. Lane, J.
Alas! The Tiffany of 34th Street disappeared and was replaced almost overnight with a nondescript gift shop.
The unhappy landlord responded by commencing this holdover proceeding claiming violations of material covenants of the lease with respect to (a) alterations, (b) insurance, (c) use, and (d) assignment.
facts
In January, 1974 landlord leased the premises, a store and basement at 21-23 West 34th Street, to one Joe Sutton for a period of 10 years. As of right, in February, 1974 the lease was assigned to Mr. Sutton’s corporation, J. Arrowsmith of 34th St., Inc.
Article No. 2 of the lease limited use of the premises to retail sale of shoes and of handbags of the type not customarily sold in drug stores, and for no other purpose. Article No. 49 permitted the sale of other products provided there was no conflict with other stores in the building, and subject to landlord’s prior written approval which landlord agreed not to unreasonably withhold. Article No. 3 contained the usual prohibition against change to the premises without landlord’s prior written consent but, subject to that consent and if contractors or mechanics approved by landlord were em *565 ployed, tenant was allowed to make nonstructural alterations. Article No. 11 contained the usual prohibition against assignment without landlord’s prior written consent. In Article No. 41 tenant was required to carry liability insurance of $500,000 one person, $1,000,000 one accident and $100,000 property damage in absence of which landlord could take out the necessary policies and charge the premiums as additional rent.
Some three and a half years later in August, 1977, with landlord’s consent, the lease was assigned to and assumed by Olé of 34th Street, Inc. (hereinafter "Olé”). Preliminary thereto, landlord and tenant had entered into a written agreement which, among other changes to the lease, amended Articles No. 2 and No. 49 "to allow Tenant to use and occupy the premises for the retail sale of jewelry.” Tenant was also permitted the sale of "related accessories customarily sold in jewelry stores, i.e., watchbands, handbags, scarfs and wallets”, provided there was no conflict with the other stores in the building and subject to landlord’s prior written approval which landlord agreed not to unreasonably withhold. Tenant’s exclusive on the sale of shoes was eliminated and landlord was specifically empowered to give another merchant in the building the right to sell shoes. The agreement also reflected landlord’s consent to the assignment to Olé.
A week or so before the agreement Olé had filed its certificate with the Secretary of State which was rejected because of similarity to names already in use. A week or so after the agreement an amended certificate of Olé Jewelry of 34th Street, Inc., was accepted. Landlord apparently was never informed of nor did it become aware of the change of name until the difficulties which gave rise to this proceeding. Rent was paid by checks drawn on a bank account continued in the former name.
Another two years passed during which Olé sold jewelry and accessories such as scarfs, umbrellas and handbags. From this together with the language of the 1977 agreement patently drafted for the purposes of Olé’s business, I infer that landlord’s consent to the sale of accessories was in fact given. The jewelry sold by Olé, while perhaps not competitive with Tiffany, Cartier or Van Cleef and Arpéis, was of good quality and certainly not inexpensive.
Apparently, however, Olé’s business was too rich for the neighborhood, for by early 1979, Olé was desperately trying to *566 get out. Landlord was not unsympathetic, but refused to accept a number of proposed assignees including a Mr. Lee of Korean extraction. Thereafter in June, 1979 landlord observed the premises empty and closed. Next, landlord observed unknown persons engaged in renovating the premises. Soon there bloomed there an entirely new business conducted by a Mr. J. Lee. Probably he is the same Mr. Lee whom landlord had turned away, but such a finding is unnecessary to disposition. Instead of being primarily a jewelry business, there is now sold some small amount of jewelry along with watches, umbrellas, suitcases, handbags, wallets, belts and other leather items. Instead of merchandise being displayed primarily in showcases, it is now also hung from pegs all over the walls. The jewelry now being sold, while perhaps not all costume jewelry as alleged by landlord, is certainly generally lower in price than during the Olé years.
Disturbed by these developments, landlord reviewed its. files and discovered it had never received evidence of insurance. It wrote to Olé and received in response a binder showing liability coverage in a total amount of only $500,000.
Mr. Lee did not receive an assignment as alleged by landlord. Rather he purchased all of the stock of and is still conducting the business under the name and style of Olé Jewelry of 34th Street, Inc.
ALTERATIONS
The extensive alterations alleged by the landlord have not been proven. The pegs added to the wall I deem to be trade fixtures rather than alterations and not within the prohibitions of Article No. 3. Even if alterations, they would be nonstructural and permitted subject only to landlord’s prior consent and approval of the workmen. Thus the breach, if any, would certainly not be a material one (N. & S. Decor Fixture Co. v V. J. Enterprises, 57 AD2d 890; see Williams v Ron-Jay Enterprises, 65 AD2d 213, 218; 1 Rasch, New York Landlord & Tenant — Summary Proceedings [2d ed], § 460).
INSURANCE
The amount of liability insurance now carried clearly fails to meet the rquirements of the lease. It is my conclusion, however, that the breach is not sufficiently material to warrant eviction and the consequent forfeiture. Landlord has *567 another easily applied remedy spelled out in the lease. Where such other reasonable avenue for resolution of the issue exists, a forfeiture is abhorrent to the law (220 West 42 Assoc. v Cohen, 60 Misc 2d 983; Madison 52nd Corp. v Ogust, 49 Misc 2d 663).
USE
The use provisions of the lease constitute a restrictive covenant. There is an escape valve from the absolutism of the words "and for no other purpose”, but it is an escape valve which can only be opened with landlord’s consent. Landlord’s obligation to be reasonable is not enough to convert otherwise clearly restrictive language into merely an intended purpose. (1 Rasch, New York Landlord & Tenant — Summary Proceedings [2d ed], § 480.)
If, as landlord argues, the restrictive covenant now limits use to a jewelry store, there is little doubt that Mr. Lee’s present business is in substantial violation thereof (30-88 Steinway St. v Bohack Co., 65 Misc 2d 1076). Perhaps that was indeed the intention of all the parties to the 1977 agreement and assignment.
Mr. Lee, however, is bound, not by the intentions of predecessors in interest, but only by what the lease as amended states unless ambiguity permits recourse to parole evidence. I find no such ambiguity. The language of the 1977 agreement with respect to use is clearly in addition to rather than in replacement of Articles No. 2 and No. 49 of the lease. The language of the agreement with respect to the sale of shoes demonstrates that the drafters knew how to revoke or rescind and replace where desired. Furthermore, the right specifically given landlord to permit other merchants in the building to sell shoes makes no sense unless tenant still retains that right —elimination of tenant’s exclusive right would have been all that was necessary. The "i.e.” (id est) with respect to accessories in context has to be given the broader meaning of "e.g.” (exempli gratia). Except for one whereas clause in the preamble to the 1977 agreement which is not operative language, there is no reference in the agreement or in the original lease to a generic type of store. Nor is there any language which even suggests a requirement that any one of the permitted products predominate.
The restrictive covenant as amended therefore simply limits the use of the premises to the retail sale of shoes, handbags, *568 jewelry and related accessories customarily sold in jewelry stores like watchbands, handbags and wallets.
Landlord may be disappointed at the loss of a fine jewelry store which would certainly help to upgrade the image of its building more than a variety gift store, but landlord never had and does not now have any right to insist on a continuance.
I am not hereby holding that all of the products now sold by Mr. Lee fall within the permitted list. Indeed I am reasonably persuaded that suitcases do not and there may be others. What I am holding is that, where a wide variety of merchandise is sold, the fact that one or a few of the items violate a restrictive use covenant will not constitute such a material breach as to justify eviction and the consequent forfeiture. Landlord has available to it injunctive relief to cure the breach. The rule underlying 220 West 42 Assoc. v Cohen (supra) and Madison 52nd Corp. v Ogust (supra) is also applicable here.
ASSIGNMENT
There has been no assignment to Mr. Lee. Landlord has been compelled to concede that, but argues that tenant has merely circumvented the no assignment provision of the lease and form should not be allowed to take precedence over substance. The other side of the coin, of course, is that form is what a corporate entity is all about, and tenant has simply reaped the benefit of good lawyering.
To my knowledge no case in New York has confronted the issue of whether a corporate tenant’s transfer of all of its stock to a third party breaches a nonassignment provision of a lease. In other jurisdictions the answer has been a resounding "No” (Ser-Bye Corp. v C. P. & G. Markets, 78 Cal App 2d 915; Burrows Motor Co. v Davis, 76 A2d 163 [DC]; Alabama Vermiculite Corp. v Patterson, 124 F Supp 441). This has been true even where landlord’s consent to an assignment to the transferee had previously been sought and refused (Ser-Bye Corp. v C. P. & G. Markets, supra).
The rule of these cases makes sense. A landlord entering a lease with a corporate tenant should be presumed to know that it is an artificial entity with a life distinct from the individuals who may from time to time be its - owners. If a landlord wished to protect itself against such vicissitude, it *569 could easily write into the lease a condition subsequent. One can certainly not be implied, however.
The adoption in New York of the rule of these cases is supported not only by logic but also by the fact that New York has reached the same result in a situation which is more difficult conceptually — where there are additions to or resignations from a partnership tenant (Roosevelt v Hopkins, 33 NY 81; 244 West 27th St. Corp. v Lieberman, 93 NYS2d 823; see Twenty-Fifth St. Realty Co. v Wachtel, 193 App Div 76, 79).
Landlord still has another arrow in its bow. It argued that the Olé which had been conducting business in the premises and whose stock is now owned by Mr. Lee was a stranger to the lease, that the Olé to which the lease was assigned with its consent never came into being, and that the individuals with whom it dealt remained responsible on the lease as agents for a nonexistent principal. Accordingly, there is no corporate tenant whose stock could be transferred, and Mr. Lee has to be an assignee without consent.
Again there is no direct New York authority, and again an answer outside New York is adverse to landlord’s position (Sumter Tobacco Warehouse Co. v Phoenix Assur. Co., 76 SC 76). In that case a deed was granted to a corporation after it had filed for its charter but before issuance, and when issued it was to a corporation with a slightly different name. The corporation was presumed to accept the grant as soon as it became competent and the misnomer was treated as de minimis.
Again the rule makes sense. Where a corporation is the intended grantee and a corporation does eventually come into existence whose owners are the same individuals with whom the grantor dealt, the transaction should not be nullified by a minor variation in the corporate name. New York has the same misnomer rule as South Carolina (Mail & Express Co. v Parker Axles, 204 App Div 327; Matter of Glen Truck Sales & Servs., 32 Misc 2d 861; see McGary v People, 45 NY 153, 159-160). New York also has the de facto corporation doctrine. Where a law exists under which the corporation could have been formed, where there has been a bona fide attempt to comply with that law, and where there has been a subsequent user of corporate powers, the user will be deemed a de facto corporation with the same powers as a de jure corporation in relation to all persons except the State (Methodist Episcopal Union Church v Pickett, 19 NY 482; Matter of Planz, 282 App *570 Div 552; see Mindlin v Gehrlein’s Marina, 58 Misc 2d 153, 154; 11 NY Jur, Corporations, § 43). Putting the two doctrines together should result in the same answer as given by South Carolina.
In the Mindlin case (supra) some misgiving was expressed as to the continued viability of the de facto corporation doctrine after the adoption of the new section 403 of the Business Corporation Law. On the other hand, section 403 has also been declared to be a codification of the de facto doctrine (Hornstein, Analysis of Business Corporation Law, McKinney’s Cons Laws of NY, Book 6, Business Corporation Law, p 450). A pretty quarrel! But never mind. That which is enough or used to be enough to create a de facto corporation is also enough to create an estoppel to deny corporate status. (United States Vinegar Co. v Schlegel, 143 NY 537; see Puro Filter Corp. of Amer. v Trembley, 266 App Div 750, 751; 11 NY Jur, Corporations, § 62 et seq.)
Interestingly enough, again a New York court has taken in its stride a situation which is conceptually more difficult. In Manufacturers Trust Co. v Falconer Realty Corp. (90 NYS2d 345) a deed conveyed property to the defendant. The intended grantee was Falconer Realty Company, Inc. The owners dissolved the existent corporation and reincorporated under the name used in the grant. In an action to foreclose a mortgage, the court had no trouble pinning title on defendant.
Accordingly, tenant may have judgment dismissing landlord’s petition, without costs.