■ Dennis' Natural Mini-Meals, Inc., Appellant, v 91 Fifth Avenue Corp., Respondent.—Judgment, Supreme Court, New York County (Irma Vidal Santaella, J.), entered

February 1, 1990, after a non-jury trial, which dismissed the complaint in its entirety and declared, *inter alia:* that plaintiff failed to renew its lease; that the lease had expired and plaintiff's tenancy had terminated; that immediate possession of the premises be awarded to the defendant; awarded defendant attorneys fees in the sum of $293,993.92 plus interest, costs and disbursements; and awarded defendant use and occupancy from January 1, 1988 through the date of judgment at the rate of $25,000 per month plus interest, costs and disbursements, reversed, on the law and the facts, the complaint reinstated and judgment is directed to be entered in favor of plaintiff declaring, *inter alia,* that it is entitled to be restored to possession of the premises until the expiration of its lease and the matter is remanded to the trial court for an assessment of damages, with costs.

On August 4, 1977, defendant, the landlord of 91 Fifth Avenue, entered into a commercial lease with Brownie's Natural Mini-Meals, Inc. for a street-level "retail store and restaurant." The president of the tenant-corporation was Dennis Brown who owned 55 shares of stock. His father owned the other 45 shares. The lease provided for a term of ten years with two five-year renewal options. It permitted the tenant to make nonstructural alterations and to attach trade fixtures without the landlord's permission, but stated that the tenant was to make no structural changes without the landlord's prior written consent or the required permits. The lease also permitted the tenant one unrestricted assignment with the landlord's permission, which was not to be unreasonably withheld, provided the assignee was in the same business, but stated that such provision applied only to Brownie's and was not available for the benefit of any assignee of Brownie's.

The tenant then took possession and during the period 1977-78 spent approximately $250,000 in converting the premises from its former use as a record store to a restaurant. In January of 1978, the tenant's certificate of incorporation was amended to change the name of the corporation to Dennis' Natural Mini-Meals, Inc. and the landlord was given written notice of the change on May 1, 1978.

On June 27, 1986, the tenant exercised the first of its five year renewal options using its original name Brownie's instead of Dennis' Natural Mini-Meals, Inc. The landlord raised no objection and, thereafter, accepted rent from Dennis' Natural Mini-Meals, Inc. The parties' relationship apparently proceeded uneventfully until early 1987 when the Browns, who

were desirous of selling their business, found potential buyers and discussed the assignment of their lease with the landlord.

By letter dated April 24, 1987, the landlord notified the tenant that since the lease provided that the right to assign "shall only apply to Brownies [sic] Natural Mini-Meals, Inc.," it would not consider any assignment by Dennis' Natural Mini-Meals, Inc. The same day, the landlord served a notice to cure alleging twelve violations of the lease including, *inter alia,* Dennis' failure to obtain a permit for a pass-through food window which had been installed in the front of the premises in 1978; its failure to obtain the necessary permits for ceramic tiles it had installed on the sidewalk in front of the premises in 1978; its hanging of two vertical cloth banners from its awning and the placing of a wooden sandwich board on the sidewalk in front of its restaurant; the intrusion on the landlord's space by the placement of two small compressors in the basement in 1978; the installation of ventilation, cooking and refrigeration equipment in 1978 without the necessary permits; and, the chaining of a rubbish container to a gate, which obstructed an entrance leading to the building's freight elevator.

On May 12, 1987, Dennis' obtained a temporary restraining order tolling the notice to cure pending determination of its motion for a *Yellowstone* injunction and commenced this action seeking declaratory relief and damages. The landlord counterclaimed for ejectment, a declaration that the lease terminated on December 31, 1987 because the tenant did not properly exercise its renewal option and damages. On December 2, 1987, a *Yellowstone* injunction was granted.

After its attempt to assign its lease was rebuffed by the landlord, Dennis' continued its search for a buyer and, on March 11, 1988, sold the common stock of the corporation to Danielle Food Corp., a corporation controlled by Jack and Joseph Bitton. The Bittons then took possession of the premises and closed the restaurant for the purpose of making certain renovations before reopening six weeks later as Jack's Cafe. Upon receiving the April 1988 rent check from the Bittons, the landlord moved to vacate the *Yellowstone* injunction, which motion was granted on June 2, 1988. On June 6, 1988, Dennis' obtained an interim stay from this Court, tolling the original notice to cure but permitting the landlord to serve a second such notice.

Thereafter, on June 10, 1988, the landlord served a second notice to cure, alleging further violations of the lease in that the stock sale was really an unauthorized assignment of the

lease; that the use of the premises had been changed to include a pizzeria, catering business and bakery; that the March 1988 alterations and installations were unapproved by the landlord and lacked the necessary permits; and, that a nuisance was created by noxious odors emanating from the premises. By order dated June 30, 1988, Dennis' motion for a second *Yellowstone* injunction was denied by the IAS court, by stays tolling both notices to cure were granted pending appeal to this Court. However, by order entered October 20, 1988, the denial of the second *Yellowstone* was affirmed (143 AD2d 1076). Trial of this action commenced January 8, 1990 and resulted in the judgment appealed from. A warrant of eviction was issued on February 1, 1990, but before it was executed upon, the Bittons, on behalf of Danielle Food Corp., agreed to surrender the premises to the landlord.

Recognizing the weight to be accorded to the decision of the fact-finding court, we nevertheless reverse and find in favor of plaintiff tenant.

Initially, it is clear that no assignment of the lease took place in 1978 when the corporate name was changed from Brownie's to Dennis'. Consequently, the landlord's refusal in 1987 to permit the tenant to exercise its right of assignment under the lease was unreasonable. In any event, while there is a paucity of case law on the issue, we agree with the court (Richard S. Lane, J.) in *Rubinstein Bros. v Olé of 34th St.* (101 Misc 2d 563) that a corporate tenant's transfer of all of its stock to a third party does not constitute a breach of a nonassignment provision of a lease even where the landlord's consent to an assignment to the transferee had previously been sought and refused. The fact that the sale of stock here was not to the originally intended assignee makes no difference since the rationale is that "[a] landlord entering a lease with a corporate tenant should be presumed to know that it is an artificial entity with a life distinct from the individuals who may from time to time be its owners. If a landlord wished to protect itself against such vicissitude, it could easily write into the lease a condition subsequent. One can certainly not be implied, however." (101 Misc 2d, *supra,* at 568-569.)

While the contract of sale of the stock did refer to an assignment of the lease, it is clear that such reference was for purposes of payment of the New York City Real Property Transfer Tax. Likewise, the use of the Brownie's name in exercising the renewal option was at most a minor mistake which should have been excused absent a showing of bad faith

or harm to the landlord. *(See, Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449, 452.)

Next, the tenant had the right under the lease to install trade fixtures which would include the ventilation, cooking and refrigeration equipment installed in 1978 and the electric ovens, walk-in refrigerator and stove installed in 1988. To the extent that the landlord's approval was required for structural changes, it is clear that the landlord signed off on the tenant's architectural plans for the pass through window in 1978 and two witnesses testified that no special permit was required. There was also evidence that the necessary permits had been obtained for the installation of the electrical systems which had then been properly inspected.

To the extent that the Department of Buildings' records for such 1978 approvals no longer existed, the tenant should not have been precluded from presenting testimony to that effect. There is also a serious question of laches on the part of the landlord regarding the work done in 1978 where it had voiced no complaints for nine years. With regard to the lack of permits for the work done in 1988, the landlord should not be allowed to reap a benefit from its refusal to cooperate in obtaining such permits.

As to the compressors in the basement, the banners, the sandwich board and the tiles installed on the sidewalk, those conditions were timely cured. The landlord also failed to prove its claims regarding the rubbish container alleged to be blocking an entrance or the alleged noxious odors and there is no evidence of a violation of the use clause in the operation of Jack's Cafe vis-à-vis Dennis'.

Finally, the Bittons' vacatur of the premises after issuance of the warrant of eviction, but before its execution, does not bar Dennis' from pursuing its appeal and seeking restoration to the premises and damages. *(See, Lemish v East-West Renovating Co.,* 156 AD2d 313, 314.)

Settle order with proposed new findings of fact and conclusions of law in accordance with this decision. Concur—Sullivan, J. P., Wallach, Kupferman and Kassal, JJ.