1296

FEDERAL PACIFIC ELECTRIC, Respondent v. CAROLINA PRODUCTION ENTERPRISES, Aetna Casualty & Surety Co., Sherwood Doolittle, Mrs. Sherwood Doolittle, Willie Coleman, Mrs. Willie Coleman, Michael Wertz and Mrs. Michael Wertz, Defendants, of whom Carolina Production Enterprises and Aetna Casualty & Surety Company are the Appellants.

(378 S. E. (2d) 56)

Court of Appeals

*James W. Alford* and *R. Lewis Johnson,* of *Barnes, Alford, Stork & Johnson,* Columbia, *for appellants.*

*Charles E. Carpenter, Jr.,* and *Frances M. Mack,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for respondent.*

Heard Jan. 25, 1989.

Decided March 6, 1989.

GOOLSBY, Judge:

This is a declaratory judgment action brought by Federal Pacific Electric against Carolina Production Enterprises, Aetna Casualty & Surety Company, and others to determine whether Carolina Production and Aetna have a duty to defend two third-party actions brought against Federal Pacific and to indemnify Federal Pacific for all injuries and damages suffered by it in the third-party actions. The circuit court directed Carolina Production and Aetna to assume

the defense of the third-party actions and to hold Federal Pacific harmless for all judgments, settlements, costs, attorney fees, and expenses arising out of the actions. Carolina Production and Aetna appeal. We reverse.

The central issue in this case is whether indemnity provisions in a lease agreement between Federal Pacific and Carolina Production impose upon Carolina Production the duty to hold Federal Pacific harmless from any liability incurred by it on account of bodily injury to a person allegedly caused by Federal Pacific's own negligence where the injury occurred on the leased premises during the term of the lease.

On July 13, 1984, Federal Pacific leased an industrial plant it had built some 15 years earlier to Carolina Production. The lease agreement provides in pertinent part:

15. *Landlord Released from Liability.* In no event shall [Federal Pacific] be liable for any injury or damage to persons or property for any reason in connection with the Leased Premises.

16. *Indemnification by Tenant and Liability Insurance.* [Carolina Production] shall indemnify [Federal Pacific] and hold it harmless from and against any damage suffered or liability incurred on account of bodily injury to any person or persons ... or any loss or damage of any kind in connection with the Leased Premises during the term of this lease. This shall include the expense of reasonable attorney's fees.

[Carolina Production], at its sole cost and expense and for the benefit of [Carolina Production], shall obtain and keep in full force and effect during the original term or extension and/or renewal thereof comprehensive public liability insurance ... protecting [Carolina Production] against any and all liability arising out of, based upon or in connection with injury to or the death of any person or persons or damage to property in or about the premises....

Sometime after the parties executed the lease agreement, Carolina Production purchased liability insurance from Aetna.

During an inspection of the plant's electrical system on

November 29, 1984, an electrical switchgear allegedly exploded and injured one of Carolina Production's employees and two other persons. Federal Pacific had manufactured the switchgear. Its contractor had installed the switchgear when Federal Pacific built the plant.

Carolina Production's employee and the wife of one of the other injured persons thereafter brought actions against Federal Pacific based solely on its design, manufacture, distribution, and installation of the switchgear. Their complaints present typical product liability causes of action based on strict liability, implied warranty, and negligence. They neither name Carolina Production as a defendant nor contain any allegations against Carolina Production.

This action followed the refusal by Carolina Production and Aetna of Federal Pacific's demand that they provide it with a defense. Federal Pacific based its demand on the provisions of the lease agreement set out above.

A contract of indemnity will be construed in accordance with the rules for the construction of contracts generally. *Longi v. Raymond-Commerce Corp.*, 34 N. J. Super. 593, 113 A. (2d) 69 (1955). Because it is somewhat unusual for an indemnitor to indemnify the indemnitee for losses resulting from the indemnitee's own negligence, a contract containing an indemnity provision that purports to relieve an indemnitee from the consequences of its own negligence will be strictly construed. Annot., 4 A. L. R. 4th 798 at 801 (1981). Indeed, most courts agree with the basic rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms. *University Plaza Shopping Center, Inc. v. Stewart*, 272 So. (2d) 507 (Fla. 1973); *Cox v. E. I. Du Pont de Nemours and Company*, 39 F.R.D. 47 (W. D. S. C. 1965); Annot., 4 A. L. R. 4th, *supra* at 801-02; *see Murray v. The Texas Co.*, 172 S. C. 399, 402, 174 S. E. 231, 232 (1934) ("[A] provision [in] a contract relieving one of the parties thereto from liability for ... its own negligence should be clear and explicit.").

The courts, however, differ in their intepretation of the words "clear and unequivocal terms" when they are applied to indemnity provisions that contain general language such

as "any and all claims." Some courts hold that the "clear and unequivocal terms" requirement is satisfied only by a specific reference in the indemnity clause to the indemnitee's negligence. Other courts take the view that words of general import are sufficient to satisfy the "clear and unequivocal terms" requirement and that a specific reference to the indemnitee's negligence is therefore not necessary. Still other courts look at the entire contract and any other factors manifesting the intention of the parties to determine whether they "clearly and unequivocally" expressed the intent to indemnify the indemnitee for its own negligence. *University Plaza Shopping Center, Inc. v. Stewart, supra;* 41 Am. Jur. (2d) *Indemnity* § 15 at 700-01 (1968); Annot., 4 A. L. R. 4th, *supra* at 802. Our Supreme Court has not yet decided which view it favors.

Turning to the indemnity provision in question, Carolina Production (the tenant and indemnitor) promises to indemnify Federal Pacific (the landlord and indemnitee) "from and against any damage suffered or liability incurred . . . or any loss or damage of any kind in connection with the Leased Premises during the term of this lease." As is readily apparent, the indemnity provision does not specifically require indemnification for damage resulting from Federal Pacific's own negligence.

We noted above that our Supreme Court has yet to choose which of the views it favors on the question of what constitutes a sufficient expression of the intent of the parties concerning the indemnification of the indemnitee for its own negligence; however, the Supreme Court hinted at its choice in *Murray v. The Texas Co., supra,* a case not cited by the court below and not mentioned in Federal Pacific's brief.

The Supreme Court in *Murray* dealt with an indemnity provision found in a contract between an oil company and a local distributor wherein the distributor agreed to sell the oil company's products and the oil company agreed to furnish the distributor the necessary equipment with which to do so. The contract's indemnity clause required the distributor to hold the oil company "harmless from all claims, suits, and liabilities of every character whatsoever and howsoever arising from the existence or use of the equipment at [the distributor's] station." 172 S. C. at 401, 174 S. E.

at 232. A leak developed in the gasoline tank installed by the oil company, causing the distributor to suffer a substantial loss. The distributor later sued the oil company for damages. The oil company defended, claiming that the indemnity provision relieved it from liability for its own negligence in the installation of the equipment. Both the trial court and the Supreme Court refused, however, to allow the oil company to use the indemnity provision as a means by which it could escape liability for its own negligence.

Commenting upon the indemnity provision of the contract, the Supreme Court stated:

> While it is true that the language used in the [indemnity] provision ... is broad and comprehensive, it is ... provocative of some doubt. The [oil company] itself wrote the provision into the contract for its own benefit. It could have plainly stated, if such was the understanding of the parties, that the [distributor] agreed to relieve it in the matter from all liability for its own negligence. As it did not do so, we resolve all doubt ... in favor of the [distributor], and hold that it was not the intent of the parties to give to the contract as written the effect claimed by the [oil] company.

*Id.* at 402-03, 174 S. E. at 232.

As in *Murray,* the language employed by the indemnity provision in the instant case is also broad and comprehensive and is provocative of some doubt; and since the indemnity provision was inserted for Federal Pacific's benefit and Federal Pacific seeks to use the provision to absolve itself from liability for its own negligence, that doubt should be resolved in favor of Carolina Production. *See Pride v. Southern Bell Telephone & Telegraph Co.,* 244 S. C. 615, 138 S. E. (2d) 155 (1964) (an exculpatory clause will be strictly construed against the party relying thereon); *South Carolina Electric & Gas Co. v. Combustion Engineering, Inc.,* 283 S. C. 182, 322 S. E. (2d) 453 (Ct. App. 1984) (the court will not construe an exculpatory clause to exempt a party from liability for its own negligence in the absence of explicit language clearly indicating that such was the parties' intention).

Resolving the doubt concerning the language used by the

indemnity provision in Carolina Production's favor, we therefore hold that the use of the general terms "indemnify ... against any damage suffered or liability incurred ... or any loss or damage of any kind in connection with the Leased Premises during the term of [the] lease" does not disclose an intention to indemnify for consequences arising from Federal Pacific's own negligence. *See American Auto Ins. Co. v. Seaboard Surety Co.*, 155 Cal. App. (2d) 192, 197, 318 P. (2d) 84, 87 (1957) (a provision contained in a lease of studio facilities stating that the tenant agreed "to save [the landlord] harmless from all ... damage ... and/or liability ... imposed upon [the landlord] by reason of injury ... to ... any ... person ... arising out of and in connection with the use by [the tenant] of [the leased] premises ..." held insufficient to constitute an indemnification against the landlord's own negligence).

The indemnity provision relates only to Carolina Production's occupation of the leased premises as a tenant. It does not relate to some independent act of negligence of Federal Pacific regarding a switchgear that Federal Pacific happened to have manufactured and to have installed on the leased premises.

We do not ignore *Midland Insurance Company v. Delta Lines, Inc.*, 530 F. Supp. 190 (D. S. C. 1982), the case relied on by the trial court; rather, we elect not to follow it. Absent from the court's opinion in *Midland* is any discussion of *Murray*, the case we believe suggests the result we have reached here.

Concerning Aetna, who issued the liability policy required by the lease agreement, its insurance coverage extends no further than Carolina Production's liability as a tenant of the leased premises. By this opinion, we have held that Carolina Production is not liable for damages arising from Federal Pacific's own negligence; thus, Aetna, as Carolina Production's insurer, owes no legal obligation here to the latter's landlord, Federal Pacific. *University Plaza Shopping Center, Inc. v. Stewart, supra.*

Reversed.

SHAW and BELL, JJ., concur.