1908

NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Respondent
v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JER-
SEY, Appellant.

(425 S.E. (2d) 754)

Court of Appeals

*Thomas C. Salane,* of *Turner, Padget, Graham & Laney,* Columbia, *for appellant.*

*Evans Taylor Barnette,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for respondent.*

Heard April 14, 1992; Decided Nov. 30, 1992.

Reh. Den. Feb. 10, 1993.

BELL, Acting Judge:

This insurance contribution case arose after National Grange Mutual Insurance Company paid a claim for fire damage to the dwelling of its insured, Robert Hutto. National Grange brought this declaratory judgment action against Firemen's Insurance Company of Newark, New Jersey, alleging that Firemen's had contributive coverage on the Hutto home and, therefore, owed a pro rata share of the loss under S.C. Code § 38-75-20 (1987). Firemen's counterclaimed seeking a declaration that its coverage was void *ab initio,* because it was procured by material misrepresentations by Hutto. After an evidentiary hearing before the circuit judge, the matter was referred to the master in equity for final judgment with direct appeal to the Supreme Court. The master entered judgment for National Grange and ordered Firemen's to pay a pro rata share of $23,686.96 to National Grange for the fire loss and $15,062.23 in prejudgment interest. Firemen's appeals. We affirm.

On November 13, 1981, Old Charleston Insurance Company cancelled its homeowner's policy on Hutto's home. On December 10, 1981, Newberry Federal Savings and Loan Associa-

tion, Hutto's mortgagee, obtained insurance on the Hutto home from National Grange. Newberry Federal paid the premium and charged it to Hutto's loan. National Grange mailed a copy of the policy to Hutto on January 4, 1982. The expiration date on the policy was December 10, 1982.

On August 17, 1982, Hutto applied to Firemen's local agent for a homeowner's policy. He signed the application and paid a premium on August 24, 1982. Hutto testified he was unaware of the National Grange policy and believed his home was uninsured when he applied for the Firemen's policy. Firemen's declined to accept the coverage, because Hutto's application did not meet certain underwriting criteria. No policy was ever issued to Hutto. However, Firemen's admits that the application signed by Hutto served as a binder of coverage until it declined to write the policy.

Hutto's home was partially destroyed by fire on August 28, 1982, four days after the binder became effective and three days before Firemen's declined Hutto's application for insurance. National Grange and Firemen's investigated the fire and adjusted Hutto's loss. National Grange paid Hutto the adjusted amount of the loss. Firemen's subsequently informed National Grange that it would not provide coverage because Hutto made material misrepresentations on the application. On January 6, 1983, National Grange made demand on Firemen's for contribution. Firemen's refused to contribute, and National Grange commenced this declaratory judgment action on August 21, 1987.

## I.

Firemen's first argues the binder should be reformed or rescinded because it was based on a mutual mistake of fact.[1] It contends it would not have provided concurrent coverage had Hutto divulged the existence of the National Grange policy.

---

[1]Firemen's also argues that the master should have voided the policy because of Hutto's intentional misrepresentations. In an action tried in equity, the Court of Appeals has jurisdiction to find facts according to its view of the preponderance of the evidence. *Hudson v. Hudson*, 294 S.C. 166, 363 S.E. (2d) 387 (Ct. App. 1987). However, we need not disregard the findings of the master. *Id.* Misrepresentation was vigorously contested below, and the master ruled that Firemen's failed to prove Hutto intentionally made misrepresentations on the application. The record reveals ample evidence to support the master's finding.

This theory was not raised in the pleadings. Firemen's did not plead mutual mistake as an affirmative defense nor did it request the relief or reformation. However, it elicited evidence on this issue during the evidentiary hearing before the circuit judge without objection by National Grange. The master did not rule on the issue of mutual mistake. Firemen's failed to bring this omission to the attention of the master by either a Rule 52(c) or 59(e), S.C.R.C.P., motion.

An issue must be raised and ruled on at the trial level to be preserved for appeal. *SSI Medical Services v. Cox*, 301 S.C. 493, 392 S.E. (2d) 789 (1990). Because the master did not rule on the issue of mutual mistake and because Firemen's failed to make a motion to bring this omission to the master's attention, Firemen's has failed to preserve this issue for appeal. *Halbersberg v. Berry*, 302 S.C. 97, 394 S.E. (2d) 7 (Ct. App. 1990).

## II.

Firemen's next argues that even if its binder of coverage is not reformed, National Grange cannot seek contribution, because it acted as a volunteer in paying the full amount of the loss.

A volunteer is one who intrudes himself into a matter which does not concern him, or one who pays the debt of another without request, when he is no legally or morally bound to do so, and when he has not interest to protect in making such payment. *Nationwide Insurance Co. v. Hartford Accident & Indemnity Co.*, 255 S.C 320, 178 S.E. (2d) 660 (1971). National Grange was protecting its legal position by paying Hutto in full. Hutto had a contractual right against National Grange to be indemnified for his loss. If National Grange had refused to pay Hutto's claim, it could have exposed itself to a suit for bad-faith refusal to pay insurance benefits. *Cf. Bartlett v. Nationwide Mutual Fire Insurance Co.*, 290 S.C. 154, 348 S.E. (2d) 530 (Ct. App. 1986), *appeal dismissed*, 297 S.C. 73, 374 S.E. (2d) 897 (1989). Similarly, if Firemen's prevailed on its misrepresentation defense in the contribution action, National Grange would be liable to pay the entire loss. *See Mid-West Mutual Insurance Co. v. Government Employees Insurance Co.*, 65 N.C. App. 143, 308 S.E. (2d) 761 (1983). Because National Grange paid Hutto in order to protect its legal position where the parties' rights were uncertain, it was not a volunteer.

## III.

Firemen's next argues the master erred in calculating its pro rata share under S.C. Code § 38-75-20, which governs the proration of coverage between contributive insurers. The statute states in pertinent part:

> If two or more policies are written upon the same property, they are considered to be contributive insurance, and, if the aggregate sum of all such insurance exceeds the insurable value of the property, as agreed by the insurer and the insured, each insurer, in the event of a total or partial loss, is liable for its pro rata share of insurance on chattels or personal property.

This statute applies because National Grange and Firemen's contracted to provide primary coverage on the same real property. National Grange provided coverage of $55,000 and Firemen's of $50,000. The sum of both policies ($105,000) exceeds the insurable value of the property ($55,000). Therefore, the statute requires that both insurers contribute a pro rata share.

The master erred by using incorrect contribution ratios to compute Firemen's contributive share. Instead of using $55,000 and $50,000, he used $99,000 and $75,000. These larger figures represent the total coverage under the policies, including personal property and loss of use. The statute expressly excludes personal property and implicitly excludes loss of use from the contribution calculation.[2]

The master's miscalculation constitutes harmless error. The proper pro rata calculation for real property[3] and for personal property and loss of use[4] achieves a less fa-

---

[2] Insurance statutes since 1896 have excluded personal property and chattels in the contribution formula. *See* Act No. 49, 1896 S.C. Acts 113. Because policies offering loss of use coverage are of relatively recent advent, the Legislature did not consider that type of coverage when it enacted the original legislation. Furthermore, Section 20 of the current statute limits the "amount of insurance" an insurer can provide to either the "value stated in the policy or the value of the property to be insured," both of which have traditionally represented only real property values. Therefore, loss of use coverage should not be included in the statutory contribution formula.

[3] National Grange paid Hutto $38,900.82 to repair his dwelling. Firemen's does not contest this amount. National Grange's pro rata share of the real property loss is 55/105x$38,900.82, or $20,376.62. Firemen's share is 50/105x$38,900.82, or $18,524.20.

[4] Firemen's argues that it should not be required to contribute a pro rata share of the personal property loss, because its homeowner's policy

vorable result for Firemen's. Because Firemen's failed to show it was prejudiced by the miscalculation, we affirm the master's judgment.[5] *See Cumbie v. Cumbie*, 245 S.C. 107, 139 S.E. (2d) 477 (1964).

## IV.

Finally, Firemen's argues that the master erred in awarding prejudgment interest to National Grange. It contends that National Grange was not a damaged party, because it paid more than its pro rata share as a volunteer. As we have discussed above, National Grange was not a volunteer, because it paid Hutto's claim in full to protect its legal position. Therefore, it is entitled to prejudgment interest on the portion of the claim for which it made demand and which Firemen's should have paid.

For the reasons stated above, we affirm the master's order holding Firemen's liable to National Grange for contribution and prejudgment interest.

Affirmed.

CURETON, J., and LITTLEJOHN, Acting Judge, concur.

---

specifically makes its coverage for this type of loss excess rather than primary. Firemen's never issued an insurance policy to Hutto. Instead, Hutto was covered by the binder when the fire occurred. A binder is a temporary contract for insurance, the terms of which determine the amount and type of coverage extended until the application is either accepted or denied. *See Vernon v. Provident Life & Accident Insurance Co.*, 266 S.C. 208, 222 S.E. (2d) 501 (1976). Although the policy Firemen's would have issued to Hutto, had it accepted his application, made its personal property coverage excess if other insurance provided the same coverage, the binder did not include such a provision. Therefore, Firemen's provided primary coverage for personal property loss under its binder.

National Grange paid Hutto $15,610.14 for damage to personal property and loss of use. Firemen's does not contest this amount. Because Firemen's and National Grange provided primary coverage on the same interest against the same casualty, the loss should fall on the two insurers equitably in proportion to the insurance provided. *See Cooper v. Georgia Casualty & Surety Co.*, 244 S.C. 286, 136 S.E. (2d) 774 (1964). National Grange carried $38,500 and Firemen's carried $25,000 coverage for personal property and loss of use. Therefore, National Grange's share is 38.5/63.5x$15,610.14, or $9,464.42. Firemen's share is 25/63.5x$15,610.14, or $6,145.72.

[5] National Grange did not cross appeal the master's calculation. The unappealed portion of a lower court's judgment presents no issue for review by this court and becomes the law of the case. *Stone v. Salley*, 244 S.C. 531, 137 S.E. (2d) 788 (1964).