584 S.E.2d 375

**LAURENS EMERGENCY MEDICAL SPECIALISTS, PA, Respondent,**

v.

**M.S. BAILEY & SONS BANKERS, and Laurens County Health Care System, Defendants,**

**Of which Laurens County Health Care System is Petitioner.**

No. 25683.

Supreme Court of South Carolina.

Heard April 22, 2003.

Decided July 28, 2003.

J. Michael Turner and Rhett D. Burney, both of Turner, Able & Burney, LLP, of Laurens, for Petitioner.

A. Camden Lewis and Thomas Pendarvis, both of Lewis, Babcock & Hawkins, of Columbia, for Respondent.

Chief Justice TOAL:

This Court granted certiorari to review the Court of Appeals' decision affirming summary judgment in favor of Respondent, Laurens Emergency Medical Specialists, P.A. ("EMS").

### FACTUAL/PROCEDURAL BACKGROUND

On November 1, 1992, EMS and Laurens County Health Care System ("Hospital") entered into a contract in which EMS agreed to provide emergency services for the Hospital. Under the contract, EMS was responsible for employing emergency room physicians and a medical director for the Hospital's emergency department. The contract required the Hospital to employ and assign non-physician personnel to the emergency department to perform the department's administrative work.

Dr. Gail Bundow, managing partner and principal shareholder of EMS, was appointed as the medical director for the Hospital's emergency department. The Hospital hired Anita Raines ("Raines") to be the secretary to Dr. Bundow in her capacity as the medical director.[1] From 1995 to 1997, Raines stole thousands of dollars from EMS before the theft was

---

[1]. There is no question that Raines was the Hospital's employee, but Dr. Bundow did get to interview Raines before the Hospital hired her and also participated in Raines' evaluations during the time she was employed by the Hospital.

finally detected. As a result, EMS sued the Hospital, alleging several causes of action, including negligent hiring, retention, and supervision of Raines; breach of contract for failure to provide qualified and competent employees and for permitting improper and illegal activities; and indemnification. EMS sought indemnification for its losses pursuant to a clause in its contract with the Hospital. The indemnification clause provided,

The Hospital will indemnify and hold [EMS] and the Emergency Physicians harmless from and against any and all claims[,] actions, liability, or expenses (including judgments, court costs, and reasonable attorney's fees) caused by or resulting from allegations of wrongful acts or omissions of Hospital employees, servants, agents. Upon notice by [EMS], the Hospital shall resist and defend, and at its own expense, and by counsel reasonably satisfactory to [EMS], such claim or action.

Hospital admitted Raines was its employee, but asserted several defenses, including that EMS was contributorily negligent in failing to procedurally safeguard against theft or detect it once it occurred. EMS moved for summary judgment on the indemnification cause of action. Hospital moved for summary judgment on all causes of action. Hospital argued any losses suffered by EMS were the result of EMS' failure to properly monitor its own affairs and Raines, and, therefore, that it was not obligated to indemnify EMS.

The trial court granted EMS' motion for summary judgment, finding that EMS was entitled to indemnification by the Hospital for the wrongful acts of Raines, as the Hospital's employee. The trial court went on to award EMS $76,709.32 in damages. Upon the Hospital's motion for reconsideration, however, the trial court reversed summary judgment on the damages issue, finding that the *amount* of damages was a question of fact for the jury to decide.

The Hospital appealed, arguing that the absence of a third party claim against EMS relieves the Hospital from indemnifying EMS. The Court of Appeals disagreed, and found that the parties to a contract may agree to indemnify each other even when no third party claim has been filed. *Laurens Emergency Med. Specialist, P.A. v. M.S. Bailey & Sons*

*Bankers,* 348 S.C. 191, 558 S.E.2d 531 (Ct.App.2002).[2]  Applying the general principles of contract interpretation, the Court of Appeals held that the parties intended for the Hospital to indemnify EMS for losses suffered at the hands of the Hospital's employees, and that embezzlement counted as an expense, a term used in the indemnification clause of the contract. *Id.* The Court of Appeals found the absence of language restricting the obligation to indemnify EMS for losses resulting form third party claims to be significant. *Id.* Similarly, the Court of Appeals found that any negligence on the part of EMS was irrelevant because the contract did not condition indemnification on a lack of negligence. *Id.* (citing *United States v. Hollis,* 424 F.2d 188, 190 (4th Cir.1970)).

The Court granted certiorari to review the following issues:

I.  Did the Court of Appeals err in holding that Hospital was obligated to indemnify EMS for losses caused by the Hospital's employee in the absence of a third party claim?

II. Did the Court of Appeals err in refusing to consider whether EMS' negligence impacted the Hospital's obligation to indemnify EMS?

## LAW/ANALYSIS

### I.  Indemnification

Hospital argues that EMS is not entitled to indemnification for the money Raines embezzled in the absence of a third party claim.  We agree.

In reviewing a summary judgment motion, the facts and circumstances must be viewed in the light most favorable to the non-moving party. *City of Columbia v. Town of Irmo,* 316 S.C. 193, 447 S.E.2d 855 (1994).  Summary judgment is appropriate when it is clear there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Café Assocs., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991).  Summary judgment should not be granted even when there is no dispute as to the evidentiary

---

2.  EMS also sued its bank, M.S Bailey & Sons Bankers, for conversion and negligence for failure to use due care in examining checks to determine whether they had been altered or forged.

facts, if there is a dispute as to the conclusions to be drawn therefrom. *MacFarlane v. Manly,* 274 S.C. 392, 264 S.E.2d 838 (1980). Upon review, an appellate court reviews the grant of summary judgment under the same standard as the trial court. *George v. Fabri,* 345 S.C. 440, 548 S.E.2d 868 (2001).

South Carolina courts have consistently defined indemnity as "that form of compensation in which a first party is liable to pay a second party for loss or damage the second party incurs to a third party." *Campbell v. Beacon Mfg. Co., Inc.,* 313 S.C. 451, 454, 438 S.E.2d 271, 272 (Ct.App.1993); *see also Winnsboro v. Wiedeman–Singleton, Inc.,* 303 S.C. 52, 398 S.E.2d 500 (Ct.App.1990), *aff'd,* 307 S.C. 128, 414 S.E.2d 118 (1992); 41 Am.Jur.2d. *Indemnity* §§ 41–44 (1995). In a second party action to recover attorney's fees for breach of contract, this Court denied attorney's fees, stating that the standard indemnification clause at issue limited recovery "to the reimbursement for damages, costs, expenses, etc. incurred in third party actions, not actions between the contracting parties themselves." *Smoak v. Carpenter Enterprises, Inc.,* 319 S.C. 222, 224, 460 S.E.2d 381, 383 (1995). In *Smoak,* the purchase and sale agreement executed by the parties contained a provision requiring the defendant/buyer to " 'indemnify and hold [Sellers] harmless' for certain damages, costs, and expenses." *Smoak,* 319 S.C. at 224, 460 S.E.2d at 383.[3]

In the present case, the Court of Appeals acknowledged this general rule, but reasoned that parties may craft an indemnity clause to provide for other forms of compensation, including one in which a first party is liable to a second party for a loss or damage the second party might incur. *Laurens Emergency Med. Specialist,* 348 S.C. 191, 194, 558 S.E.2d 531. In support of this proposition, the Court of Appeals cites to a decision by the Texas Supreme Court: *Dresser Industries, Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993). In *Dresser,* however, the indemnity clause expressly provided for second party indemnity,

---

**3.** Judging from this excerpt of the indemnification clause in *Smoak,* the clause in *Smoak* is very similar to the indemnification clause in the present case in which the Hospital agreed to "indemnify and hold [EMS] ... harmless from and against any and all claims[,] actions, liability, or expenses."

[Page] shall indemnify [Dresser] and hold [Dresser] free and harmless from all claims for ... subsurface damage or injury to the well ... including claims alleging that injuries or damages were caused by [Dresser's] negligence, *whether such claims are made by [Page], by [Page's] employees, or by third parties.*

853 S.W.2d at 506–07 (emphasis added).

There is no such provision for second party indemnification in the indemnity agreement between EMS and Hospital presently before the Court. *Infra,* page 2. This Court's decision in *Smoak* indicates that the default rule of interpretation for indemnity clauses is that third party claims are a prerequisite to indemnification. 319 S.C. at 224, 460 S.E.2d at 383. In *Smoak,* the Court concluded that the indemnification provision was limited to reimbursement for expenses incurred in third party actions based on the clause itself and on a reading of the entire agreement between the parties. *Id.*

In our opinion, the clause at issue in this case is a typical indemnity agreement, much like the clause presented in *Smoak.* The contract between EMS and the Hospital contains reciprocal indemnification provisions; both parties agreed to indemnify each other under the same circumstances. In our view, the circumstance EMS and the Hospital contemplated in including an indemnity provision in their contract was a third party claim brought against one of them for the wrongful acts of the other. As such, we find that it cannot be invoked absent a third party claim against the second party, EMS.

We base this conclusion on the language of the clause itself: The Hospital will indemnify and hold [EMS] and the Emergency Physicians harmless from and against any and all claims[,] actions, liability, or expenses (including judgments, court costs, and reasonable attorney's fees) caused by or resulting from allegations of wrongful acts or omissions of Hospital employees, servants, agents. Upon notice by [EMS], the Hospital shall resist and defend, and at its own expense, and by counsel reasonably satisfactory to [EMS], *such* claim or action.

(emphasis added). The above quoted language, so similar to the indemnity agreement in the *Smoak* contract, supports the

interpretation that the intended purpose of this indemnification clause was protection against third party claims, not reimbursement for claims between the parties themselves. *Smoak.*

We believe the business arrangement between EMS and Hospital make the purpose for the mutual indemnity clauses within their contract clear. EMS contracted to perform emergency services that would otherwise be provided by the Hospital. EMS would be liable to third parties for its physicians and other employees' negligence, but it did not want to assume liability to third parties for the actions of the Hospital's employees. Similarly, the Hospital did not want to assume liability to third parties for the actions of EMS' employees. Based on these circumstances and this Court's indemnity clause jurisprudence, we decline to broaden the scope of a standard indemnity clause to include recovery for second party claims when the agreement does not explicitly contemplate those claims.

## II. EMS' Negligence

■ Hospital argues that the Court of Appeals erred in holding that EMS' own negligence was irrelevant in determining Hospital's obligation to indemnify. We agree.

In determining that EMS' negligence (if there was any) had no impact on the Hospital's obligation to indemnify, the Court of Appeals attached considerable importance to the contract's failure to condition the Hospital's liability on anything related to negligence by EMS. In doing so, the Court of Appeals overlooked the rule requiring strict construction of a contract containing an indemnity provision purporting to relieve an indemnitee from the consequences of its own negligence. *Federal Pacific Elec. v. Carolina Production Enterprises,* 298 S.C. 23, 378 S.E.2d 56 (Ct.App.1989). "Indeed, most courts agree with the basic rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." *Id.* at 26, 378 S.E.2d at 57; 41 Am.Jur.2d *Indemnity* § 20. Specifically, the *Federal Pacific* court found that the indemnification clause did not meet this standard. The court held "that the use of the general terms 'indemnify ... against any damage suffered or liability incurred ... or any loss or damage of any kind in

connection with the Leased Premises during the term of [the] lease' does not disclose an intention to indemnify for consequences arising from [the indemnitee's] own negligence." *Federal Pacific*, 298 S.C. at 28, 378 S.E.2d at 58–59.

In this case, the indemnity provision is even narrower than the provision in *Federal Pacific*; it does not have the loss or damage "of any kind" language that the court found to be insufficient in *Federal Pacific*. The standard language in the indemnification clause here does not disclose an intention by the parties to relieve EMS of the consequences of its own negligence.

### CONCLUSION

For the foregoing reasons, we **REVERSE** the decision of the Court of Appeals affirming summary judgment in favor of EMS and **REMAND** for entry of summary judgment in favor of the Hospital on EMS' indemnification cause of action.

MOORE, WALLER and BURNETT, JJ., concur. Acting Justice JAMES C. WILLIAMS, JR., dissenting in a separate opinion.

JAMES C. WILLIAMS, A.J.:

Because I believe that the case was correctly reasoned and decided by the Court of Appeals, I respectfully dissent.