593 S.E.2d 183

Robert E. RUMPF, Alice Rumpf Easton, and Theresa Horton as Personal Representative for the Estate of Marvin G. Rumpf, individually and as shareholders in the former Rumpf Truck Line, Inc., a Michigan corporation; Diane Rumpf Ketring, John Rumpf, Philip Rumpf and Keye Rumpf Hennessey as heirs to and beneficiaries of the Estate of Marvin G. Rumpf, Appellants,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE CO., The Palmetto Bank, Phillip Betette, individually and as agent for The Palmetto Bank, and DOES 1–5, inclusive, Defendants,

of whom Massachusetts Mutual Life Insurance
Co., The Palmetto Bank, and Phillip
Betette, are Respondents.

No. 3738.

Court of Appeals of South Carolina.

Heard Jan. 14, 2004.

Decided Feb. 2, 2004.

388

Marjorie T. Simmons, of Bellingham, Washington; and Rodney F. Pillsbury, of Greenville, for Appellants.

Grady L. Patterson, III, of Columbia, for Respondent Massachusetts Mutual Life Insurance Co.

James Theodore Gentry, of Greenville, for Respondents The Palmetto Bank and Phillip Betette.

ANDERSON, J.:

Appellants brought this action against Massachusetts Mutual Life Insurance Company ("Mass Mutual") and The Palmetto Bank ("Palmetto Bank") asserting causes of action for fraud and breach of fiduciary duty relating to the payment of dividends that accrued under an annuity contract with Mass Mutual. The trial court found these claims failed on their merits and were barred by the applicable statute of limitations. We affirm.

### FACTS/PROCEDURAL BACKGROUND

This case has its origins with a company that no longer exists, Rumpf Truck Line, Inc. ("RTL"). RTL was a family-owned business with three shareholders: siblings Marvin G. Rumpf, Robert E. Rumpf, and Alice Rumpf Easton. Marvin Rumpf served as president of the company.

In 1966, RTL and Mass Mutual entered into a contract containing a pension plan for the non-union employees of RTL. The contract gave retirement benefits to RTL employees in the form of annuities having defined benefit schedules. Marvin Rumpf served as the pension plan administrator.

In 1975, RTL merged with Duff Truck Line, Inc. Duff decided to discontinue the pension plan. The contract with Mass Mutual was amended so that all of the RTL employees

who had participated in the pension plan—including Marvin Rumpf—were given paid-up annuities in the value of their pension plan balances.

It was anticipated, however, that the investment returns Mass Mutual received under the contract would sometimes exceed the amount needed to pay the benefits under the individual annuity contracts. When those circumstances arose, the amended contract provided that any dividends declared by Mass Mutual after the commencement of the paid-up term would be "paid in cash to the Contractholder or such person, persons, firm or corporation as the Contractholder may designate."

On August 7, 1979, Denise A. Wilson, with Mass Mutual's Group Pension Consulting Department, wrote to Marvin Rumpf as plan administrator informing him that dividends had accrued under the contract that Mass Mutual wished to pay. The letter noted that Mass Mutual did not know to whom it should send the dividends—advising Rumpf that it could not determine whether the contractholder was RTL or Duff. Mass Mutual wrote Duff notifying it of the same information.

Marvin Rumpf replied by letter, dated August 25, 1979, that all dividends should be sent to him and that he would ensure they were distributed among the three stockholders. Duff responded to Mass Mutual claiming it was the proper contractholder. Mass Mutual replied to both Marvin Rumpf and Duff informing them of the dispute.

On September 16, 1980, Marvin Rumpf again inquired with Mass Mutual regarding the status of the dividend payment. Mass Mutual advised Marvin Rumpf and Duff by letter dated November 3, 1980 that it could not pay dividends until the parties determined which was the contractholder.

Marvin Rumpf took no further action to claim or ascertain his entitlement to any dividends. He died in South Carolina in 1989, survived by his four children who were the beneficiaries of his estate.

As directed in his will, Palmetto Bank was appointed personal representative of Rumpf's estate. Phillip Betette, a senior trust officer for Palmetto Bank, carried out much of the bank's work on the estate, but was not himself named personal

representative. The estate was closed after a hearing before the probate court.

In 1993, Duff Truck Lines dissolved. Mass Mutual later escheated the accumulated dividends for the period 1979 through 1989 to the State of South Carolina. Throughout the balance of the 1990's, dividends continued to accrue under the contract and were held by Mass Mutual.

No one inquired regarding the status or ownership of these funds until "late April, 1999." That year, one of Marvin Rumpf's surviving daughters discovered the escheated dividend payments "while browsing the Internet." The surviving shareholders and other beneficiaries of Marvin Rumpf confronted Palmetto Bank and Mass Mutual as to why they had not been informed of the accumulated dividends at the time of the distribution of Marvin Rumpf's estate a decade earlier.

Upon demand from the beneficiaries, Mass Mutual, on October 6, 1999, paid them accumulated dividends, in the amount of $169,873.45, for the period 1990 through 1999. The shareholders and heirs obtained the escheated funds from the State in the sum of $186,394.04 by check dated December 13, 1999. Accordingly, all dividends under the contract have been paid.

## This Action

Though all of the accrued dividends were ultimately paid, the beneficiaries believed Mass Mutual and Palmetto Bank acted wrongfully by failing to discover or actively concealing their entitlement to the dividend funds. Thus, they brought the present action. Against Mass Mutual, they asserted multiple claims for breach of contract, fraud, breach of fiduciary duty, insurance bad-faith, conversion, and unfair trade practices. They alleged breach of fiduciary duty and fraud against Palmetto Bank.

The trial court granted summary judgment in favor of both defendants on all of the causes of action. Though the court addressed the merits of the individual claims, it found the entire case against Mass Mutual was barred by the applicable statute of limitations. Likewise, in a separate order addressing the claims against Palmetto Bank, the trial court held that action was barred because the statute of limitations had

expired. The court further ruled the action was barred because the probate court overseeing the administration of Marvin Rumpf's estate had discharged Palmetto Bank from all liability as personal representative, and the beneficiaries of Marvin Rumpf's estate had signed a full release in favor of Palmetto Bank upon distribution of property from the estate.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Laurens Emergency Med. Specialists v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 584 S.E.2d 375 (2003); *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002); *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Sauner v. Public Serv. Auth.*, 354 S.C. 397, 581 S.E.2d 161 (2003); *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711 (2003); *McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998); *see also Laurens Emergency Med. Specialists*, 355 S.C. at 108, 584 S.E.2d at 377 (stating that in reviewing summary judgment motion, facts and circumstances must be viewed in light most favorable to non-moving party). If triable issues exist, those issues must go to the jury. *Baril v. Aiken Reg'l Med. Ctrs.*, 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 578 S.E.2d 329 (2003); *Regions Bank*, 354 S.C. at 659, 582 S.E.2d at 438; *Hedgepath v. American Tel. & Tel. Co.*, 348 S.C. 340, 559 S.E.2d 327

(Ct.App.2001); Rule 56(c), SCRCP. All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Schmidt v. Courtney*, 357 S.C. 310, 592 S.E.2d 326 (2003); *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); *see also Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002) ("On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below.").

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 534 S.E.2d 688 (2000); *Bayle*, 344 S.C. at 120, 542 S.E.2d at 738. Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672 (2000). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Hedgepath*, 348 S.C. at 355, 559 S.E.2d at 336; *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997).

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Regions Bank*, 354 S.C. at 659, 582 S.E.2d at 438; *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank*, 354 S.C. at 660, 582 S.E.2d at 438. Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 789 (1990); *Peterson v. West American Ins. Co.*, 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999); Rule 56(c), SCRCP. The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields*, 354 S.C. 58, 580 S.E.2d

433 (2003); *George v. Fabri,* 345 S.C. 440, 548 S.E.2d 868 (2001).

## LAW/ANALYSIS

### I. Claims Against Mass Mutual

Appellants argue the trial court erred in ruling their claims against Mass Mutual were barred by the statute of limitations. We disagree.

Under the former South Carolina Code section 15–3–530, plaintiffs alleging an action in contract or tort were required to bring suit within six years of the time the cause of action arose. In 1988, this time period was shortened to three years for causes of action arising on or after April 5, 1988. *See* Annotation, S.C.Code Ann. § 15–3–530 (Supp.2003) (referencing 1988 Act No. 432).

In determining when a cause of action arose under section 15–3–530, we apply the "discovery rule." *See Santee Portland Cement Co. v. Daniel Int'l Corp.,* 299 S.C. 269, 384 S.E.2d 693 (1989), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div.,* 319 S.C. 556, 462 S.E.2d 858 (1995). According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001). Under this rule, a cause of action accrues for purposes of the statute of limitations when a plaintiff has notice that he might have a remedy for a harm. *Dean v. Ruscon Corp.,* 321 S.C. 360, 468 S.E.2d 645 (1996). The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. *Hedgepath,* 348 S.C. at 355–56, 559 S.E.2d at 336; *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999). In explaining the discovery rule, our Supreme Court held:

We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a

reasonable person of common knowledge and experience on notice that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

*Dean,* 321 S.C. at 363–64, 468 S.E.2d at 647 (citation and emphasis omitted); *see also Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994) (stating exercise of reasonable diligence means simply that injured party must act with some promptness where facts and circumstances of injury would put person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist; statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed); *Burgess v. American Cancer Soc'y,* 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989) (noting that statute starts to run upon discovery of such facts as would have led to knowledge thereof if pursued with reasonable diligence). Reasonable diligence is intrinsically tied to the issue of notice. *Hedgepath,* 348 S.C. at 356, 559 S.E.2d at 336; *Bayle,* 344 S.C. at 126, 542 S.E.2d at 741.

 The date on which discovery of the cause of action should have been made is an objective, rather than a subjective, question. *Hedgepath,* 348 S.C. at 356, 559 S.E.2d at 336; *Joubert v. South Carolina Dep't of Soc. Servs.,* 341 S.C. 176, 534 S.E.2d 1 (Ct.App.2000). In other words, whether the particular plaintiff actually knew he had a claim is not the test. *Young,* 333 S.C. at 719, 511 S.E.2d at 416. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist. *Id.*

 In this case, we look to whether Marvin Rumpf knew or should have known that he, along with other shareholders, were entitled to receive the dividend payments from Mass Mutual. It is undisputed that the claims of Marvin Rumpf's four children as beneficiaries of his estate are derivative only and rest upon the knowledge of Marvin Rumpf as to when the causes of action arose. Appellants contend the trial court erred in finding Marvin Rumpf acted as the agent of his

sibling shareholders, and that his knowledge should be imputed to them. We disagree.

Marvin Rumpf was the plan administrator when the pension plan was discontinued and the individual, fully-paid annuities were purchased. All contact with Mass Mutual was handled by Marvin Rumpf or his attorney.

Appellants claim that Marvin Rumpf notified Mass Mutual that he was not acting on behalf of the other shareholders. Specifically, Appellants rely upon a letter dated March 22, 1976, from Marvin Rumpf to Mass Mutual in which Marvin Rumpf indicates that Mass Mutual should correspond with fellow shareholders Robert Rumpf and Alice Easton regarding the pension. Yet, at all times following this letter, Marvin Rumpf continued to handle all pension-related affairs on behalf of his two co-shareholders.

For example, Mass Mutual sent annuity information to Robert Rumpf on May 21, 1976. The reply to Mass Mutual, however, came from Marvin Rumpf's attorney and contained the Plan Administrator's Certification of Sufficiency required to close out the pension plan which was signed by Marvin Rumpf.

There is no proof that anyone other than Marvin Rumpf and his attorney were involved with the pension plan and subsequent annuity contract.

The evidence establishes that Marvin Rumpf knew or should have known, that he and his fellow shareholders were entitled to payment of the dividends received under the annuity contract. Mass Mutual wrote to Marvin Rumpf on August 7, 1979, and advised him that dividends had accrued under the contract with Mass Mutual. He was later informed by Mass Mutual on November 3, 1980, that there was a dispute regarding who should receive the dividends—RTL or Duff Truck Lines. At that time, Mass Mutual explicitly advised Marvin Rumpf that:

> We have taken this matter up with our law department and it is our position that Massachusetts Mutual is not the party to determine to whom the dividend is to be paid. May we ask that you contact Mr. Keenan of Duff Truck Line, Inc. and resolve this matter.

We find that any cause of action against Mass Mutual accrued no later than 1980. Instead of pursuing his claim to the dividend payments, Marvin Rumpf permitted the then-existing six year statute of limitations to lapse. Concomitantly, we affirm the trial court's ruling that the entire action against Mass Mutual is barred by the statute of limitations.

## II. Claims Against Palmetto Bank

### A. Applicable Statute of Limitations

■ We do not reach the merits of Appellants' claims against Palmetto Bank because their action is barred by the statute of limitations. As with the claims against Mass Mutual, the action against Palmetto Bank rests on the fact that Palmetto Bank failed to secure ownership of the disputed funds for the estate of Marvin Rumpf. At the time of Marvin Rumpf's death, his right to bring suit to obtain the dividend funds from Mass Mutual had already expired. Consequently, Appellants' derivative claims through the Estate are barred by S.C.Code Ann. § 15–3–530.

### B. S.C.Code Ann. § 62–3–1001

■ Furthermore, Appellants' claims are barred because the probate court overseeing the administration of Marvin Rumpf's estate discharged the personal representative from any liability for the estate. South Carolina Code section 62–3–1001 reads:

[T]he court may enter an order or orders, on appropriate conditions, determining testacy, determining the persons entitled to distribution of the estate, and, as circumstances require, approving settlement and directing or approving distribution of the estate, terminating the appointment of the personal representative, *and discharging the personal representative from further claim or demand of any interested person.*

S.C.Code Ann. § 62–3–1001 (Supp.2003) (emphasis added).

Palmetto Bank petitioned the probate court for an order of discharge. Notice of the petition was served on all of the parties, and a hearing was held in November 1990. None of the Appellants appeared at the hearing. After the hearing, Probate Judge Ralph Drake signed a form discharge order.

Judge Drake, however, did not check any of the boxes on the preprinted form order indicating the action the court intended to take.

In order to clear up the ambiguity surrounding the effect of the probate court's order, Palmetto Bank submitted an affidavit of Judge Drake as evidence of his intent in signing the order. In the affidavit, Judge Drake declared that his failure to check any of the boxes on the form was an oversight. He further stated that his intention was to check Box 3 on the form, which provides: "[T]he Personal Representative is released and discharged as the Personal Representative, and any and all liability arising in connection with the performance of the Representative's duties and the administration of the estate be closed."

 We first note that Appellants failed to appeal the trial court's findings with regard to the probate court's discharge of liability. Any unappealed portion of the trial court's judgment is the law of the case, and must therefore be affirmed. *See Greenville County v. Kenwood Enters., Inc.,* 353 S.C. 157, 577 S.E.2d 428 (2003); *Douglass v. Boyce,* 344 S.C. 5, 542 S.E.2d 715 (2001); *National Grange Mut. Ins. Co. v. Firemen's Ins. Co.,* 310 S.C. 116, 425 S.E.2d 754 (Ct.App.1992); *see also ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 489 S.E.2d 470 (1997) (emphasizing that unappealed rulings become law of case and should not be reconsidered by this Court). A challenge to the Circuit Court's ruling on this point is not properly before this Court.

## CONCLUSION

We conclude the trial court correctly found that all of Appellants' claims against Mass Mutual are barred by the statute of limitations. Similarly, the claims against Palmetto Bank are barred by the statute of limitations as well as the discharge of liability entered by the probate court. Accordingly, the judgment of the trial court is

**AFFIRMED.**

GOOLSBY, J., and CURETON, A.J., concur.